# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LUCRECIOUS TOWERS,** | ) | |
| | ) | |
| **Petitioner,** | ) | **17-cv-7481** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **FRANK LAWRENCE, Acting Warden,** | ) | |
| **Menard Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Lucrecious Towers has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his conviction for first-degree murder. Towers advances several grounds for *habeas* relief: actual innocence based on newly discovered evidence; ineffective assistance of trial counsel; and improper rulings by the trial court regarding evidence of his prior criminal convictions. Frank Lawrence, Acting Warden of Menard Correctional Center ("Respondent"),[1] argues that Petitioner's claims are meritless, non-cognizable, or procedurally defaulted.

For the reasons set forth herein, the Court denies the petition in part and reserves ruling as to Petitioner's ineffective-assistance-of-counsel claim until an evidentiary hearing can be held. The Court will recruit counsel to represent

---

[1] Rule 2(a) of the Rules Governing Section 2254 *habeas* cases provides that the proper respondent is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Frank Lawrence is currently the Acting Warden of Menard Correctional Center. Accordingly, the Court substitutes him as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

Petitioner for the limited purpose of the evidentiary hearing as to Petitioner's ineffective-assistance-of-counsel claim. Petitioner's counsel is granted leave to subpoena trial counsel for records and to conduct any necessary depositions. A status hearing is scheduled for November 5, 2019 at 9:00 a.m. to set a discovery schedule and a date for the evidentiary hearing.

## Factual Background

A jury convicted Towers of the first-degree murder of John Falls. *See People v. Towers*, No. 1-14-1474, 2016 WL 7434788, at *4 (Ill. App. Ct. Dec. 23, 2016). The facts underlying the conviction are as follows.[2]

In the early morning of January 14, 2006, Falls was driving a Jeep Trailblazer near Emerald Street and 56th Street in Chicago, Illinois. *Id.* at *1. Three others were also in the car: Christopher Doss, James Harper, and April McFulson. *Id.*

Falls drove north on Emerald Street and pulled up behind a gray Ford Focus that was stopped in the street, blocking the northbound lane. *Id.* The Focus was parked next to a white Pontiac Bonneville. *Id.* Falls honked his horn, drove around the Focus, and proceeded north on Emerald Street. *Id.* He then pulled into an alley nearby, exited his vehicle, and confronted the driver of the Focus. A physical altercation ensued. *Id.*

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), the state courts' recitations of fact are presumptively correct in *habeas* proceedings. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because Towers has not attempted to rebut the presumption with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), the Court adopts the factual account as provided in *People v. Towers*, No. 1-14-1474, 2016 WL 7434788, at *1–6 (Ill. App. Ct. Dec. 23, 2016) and *People v. Towers*, No. 1-08-1875, slip op. at 2–11 (Ill. App. Ct. Mar. 9, 2010).

At this point, the driver of the Bonneville pulled up to the alley and got out of his car. *Id.* Doss and Harper then also exited the Trailblazer; McFulson remained in the SUV.

Doss began fighting with the Bonneville driver, while Harper joined Falls in fighting the Focus driver. *Id.* Harper hit the Focus driver with an empty vodka bottle, causing him to fall to the ground, at which point the Bonneville driver fled. *Id.* Harper then got into the Focus and crashed it into a tree. *Id.* Falls, Harper, and Doss got back into the Trailblazer and drove away. *Id.*

Meanwhile, the Bonneville driver returned to his car and began pursuing the Trailblazer, ultimately rear-ending the SUV and causing it to collide with a parked vehicle. *Id.* at *2. The Bonneville driver then sped away. *Id.*

Falls drove the damaged Trailblazer to 69th Street and Wentworth Avenue and parked it in front of Harper's house. *Id.* The group got into Harper's truck, drove to a police station to file a report, then proceeded to a party where they stayed until 6:00 or 6:30 in the morning. *Id.*

After the party, McFulson and Falls went to Falls's sister's house, where they slept until noon. *Id.* Falls then borrowed his sister's white Volkswagen Touareg, and he and McFulson drove to Popeye's Louisiana Kitchen ("Popeye's"), a fast-food restaurant located at 75th Street and Lafayette Avenue. *Id.*

As they waited in the drive-through lane of the Popeye's, a man walked up to the driver's side of the Touareg and fired a gun six or seven times through the car's window. *Id.* The shooter pulled a hood over his face and ran around the corner of the

restaurant. *Id.* McFulson eventually ran into the restaurant and told someone to call the police. *Id.* Falls died after suffering five gunshot wounds to his left side. *Id.* at *3.

Detectives Paul Spagnola and Rick Harrison were assigned to investigate the shooting. *Id.* at *2. They interviewed witnesses who described the shooter as a black male, between 26 and 27 years old, approximately 5'8" tall, weighing approximately 160 pounds, and wearing a dark leather jacket, dark clothes, and a hooded sweater, with the hood down. *Id.* McFulson stated that she saw the man walk up to the Touareg's window before lowering her head to avoid falling glass from the shooting. Another witness, Edwina Ross, said that she had been sitting in a car in front of the Touareg in the drive-through lane and saw the entire scene unfold. *Id.*

Detectives Spagnola and Harrison also went to 5639 South Emerald Street to look at a dark blue 1992 Chevrolet Lumina, which matched the description of a car that witnesses described as the getaway car for the murder. The car was registered to a Marco McNeal. *Id.* at *2.

On January 16, 2006, Detective Spagnola composed a black-and-white photo array to show to Doss, Harper, and McFulson. The array included photographs of McNeal and another individual, Arian Bonds. But the array did not include a picture of Towers, presumably because Towers was not a suspect at that time. *Id.* at *3.

After reviewing the photo array, Doss said that McNeal looked like the Focus driver from the altercation and that Bonds resembled the Bonneville driver. *Id.*

Harper also identified McNeal as the Focus driver. *Id.* McFulson was unable to make any identifications from the array. *Id.*

From this, Detective Spagnola turned his attention to McNeal and Bonds. He was unable to locate McNeal, but was able to interview Arian Bonds and his brother Carlos Bonds. *Id.* at *3. Based upon these interviews, Detective Spagnola then shifted the focus of his investigation to Towers. *Id.*

Detective Spagnola created a second photo array that included color photographs of Towers and a person named Terrence Cobb and showed it to Doss, Harper, and McFulson. *Id.* This time, Doss and Harper identified Cobb as the driver of the Focus, and Towers as the driver of the white Bonneville. *Id.* Furthermore, McFulson identified Towers as the person whom she saw walk in front of the Touareg immediately before the shooting started. *Id.* Ross also identified Towers as the shooter. *Id.*

Towers was arrested in March 2006 and placed in a lineup. *Id.* Doss, Harper, McFulson, and Ross each identified Towers in the lineup consistent with their identifications from the second photo array. *Id.*

At Tower's trial, Doss, Harper, McFulson, Ross, and Detective Spagnola each testified to the facts described above. *Id.* at *1–3. Doss and Harper identified Towers as the Bonneville driver with whom they had fought, *id.* at *1, and McFulson identified Towers as the person whom she saw walk in front of the Touareg before she heard the gunshots and lowered her head. *Id.* at *2. Ross also identified Towers as the person who fired multiple shots at the Touareg. *Id.*

Additionally, at the trial, Harper testified that, prior to the altercation, the four were driving in the area because Falls was looking for his ex-girlfriend, Ebony Ester, who was staying at a friend's house. *Id.* at *2.

After the prosecution rested, the defense called Carlos Bonds, who testified that, in January 2006, he had been living with his brother, Arian Bonds, at 5638 South Emerald Street. *Id.* at *3. He explained that both Arian and Towers drove white Bonnevilles, and both men wore their hair in braids. *Id.* He also testified that Arian was dating Ebony Ester at the time of the incident. *Id.* When asked on cross-examination whether he had told the police on January 14, 2006, and the state's attorney on March 14, 2006, that he had seen Towers driving a dark-colored Lumina, Carlos stated that he had not. *Id.*

Towers testified on his own behalf. *Id.* He acknowledged that, in January 2006, he drove a white Bonneville and wore his hair in braids. *Id.* He also stated that he lived at 5630 South Emerald Street for about a month, and that he was frequently in the area. *Id.* But he denied any involvement in the traffic altercation or shooting of January 14, 2006. *Id.* He testified that he knew Arian Bonds and that Arian also drove a white Bonneville. *Id.*

Prior to the trial, Towers had moved *in limine* to exclude evidence of his felony convictions in 1998 and 2000 for controlled-substances offenses. *See* State Court Record, Ex. D, *People v. Towers*, No. 1-08-1875, slip op. at 2–3 (Ill. App. Ct. Mar. 9, 2010), ECF No. 17. The trial court reserved ruling on this testimony until after Towers testified. *Id.*

During his cross-examination, Towers testified without objection that he had previously used the names "Demetrius Hicks" and "Demetrius Coleman." *Id.* at 9. Then, in response to the prosecutor's questions and over defense counsel's objection, Towers admitted that he had given those names to police to obscure his identity and avoid going to jail. *Id.* After hearing this testimony, the trial court ruled that evidence of Towers's prior convictions would be admissible, noting that Towers had already admitted to "prior interaction with the law enforcement," and thus "the probative value [of his prior convictions] outweigh[ed] the prejudicial effect." *Id.* at 9–10. The court ruled, however, that the prosecution would be limited to introducing only the mere fact that Towers had been previously convicted of felonies. *Id.* at 10. Defense counsel responded that this approach was "fine." *Id.* On rebuttal, the prosecution presented three certified statements reflecting Towers's prior convictions. *Id.* at 10–11.

The prosecution also used its rebuttal to impeach Carlos Bonds's testimony. Assistant State's Attorney Mary Anna Planey testified that, in March 2006, she had interviewed Carlos Bonds, who had told her that he had seen Towers driving a dark-colored Lumina on January 14, 2006. *See People v. Towers*, 2016 WL 7434788, at *4.

During closing arguments, defense counsel argued that Arian Bonds, not Towers, had committed the crime. *Id.* He noted that Arian Bonds lived near 56th and Emerald Streets, drove a white Bonneville, and wore his hair in braids, just like Towers. *Id.* Counsel also pointed out that Arian Bonds was dating Falls's ex-girlfriend who, according to Harper, Falls had been trying to catch with her new

boyfriend (which we now know was Bonds) in the early morning hours of January 14, 2006. *Id.* Counsel attacked the prosecution's witnesses' credibility, highlighted discrepancies in their testimony, and argued that McFulson's and Ross's identifications were unreliable. *Id.*

The jury convicted Towers of first-degree murder, and the trial court sentenced him to a 100-year term of imprisonment. *Id.*

### Direct Appeal

On direct appeal, Towers contended that the trial court improperly admitted evidence of his prior convictions and interactions with police. *See* State Court Record, Ex. A, Pet'r's Opening Br., *People v. Towers*, No. 1-08-1875, at 15–24 (Ill. App. Ct. 2010). In particular, Towers argued that the trial court erred by: (1) reserving ruling on his pretrial motion to exclude evidence of his prior convictions until after he testified; (2) permitting the prosecution to cross-examine him about his previous encounters with police; (3) relying on his testimony from that cross-examination to find his prior convictions admissible; and (4) requiring the prosecution to use the "mere-fact" method of introducing the prior convictions. *Id.* at 15, 18, 21. The combined effect of these errors, Towers argued, was prejudicial. *Id.* at 22.

The Illinois Appellate Court affirmed Towers's conviction and sentence. *See generally id.*, Ex. D, *People v. Towers*, No. 1-08-1875, slip op. (Ill. App. Ct. Mar. 9, 2010). Towers then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court. *See generally id.*, Ex. E, Pet'r's Direct Appeal PLA. In the PLA, he raised the same issues regarding the use of his prior convictions and police encounters

during trial. *Id.* at 3. The Illinois Supreme Court denied the PLA on May 26, 2010. *See id.*, Ex. F, Order Denying PLA, *People v. Towers*, No. 110183 (Ill. 2010). The United States Supreme Court denied *certiorari* on November 8, 2010. *Id.*, Ex. G, Order Denying *Certiorari*, *Towers v. Illinois*, No. 10-6451 (U.S. 2010).

### Post-Conviction Proceedings

On March 7, 2011, Towers, proceeding *pro se*, filed a postconviction petition in the state trial court. *See generally id.*, Ex. H, Pet'r's *Pro Se* Postconviction Petition, *People v. Towers*, No. 06 CR 8139. In the petition, among other things, he alleged that his trial counsel was ineffective for failing to investigate and call witnesses such as Marco McNeal. *Id.* at 17–22.

On September 27, 2012, Towers submitted an amended postconviction petition through counsel. *See id.*, Ex. I, Pet'r's Counseled Postconviction Petition, *People v. Towers*, No. 06 CR 8139. In the amended petition, Towers raised the following claims: (1) actual innocence based on the newly discovered affidavit of a purported eyewitness to the shooting, Ralph Lewis, who could testify that Arian Bonds was the shooter; and (2) ineffective assistance of trial counsel for failing to investigate or call as witnesses Marco McNeal, Eric Carson, Gregory Brooks, or Terrence Cobb. *Id.* at 3–4. In support of the amended petition, Towers attached his own affidavit, as well as statements from McNeal, Carson, Brooks, Cobb, and Lewis. *See Towers*, 2016 WL 7434788, at *4. On May 1, 2014, the trial court dismissed Towers's petition. *See* State Court Record, Ex. J, Order Dismissing Postconviction Petition, *People v. Towers*, No. 06 CR 8139 (Cir. Ct. Cook Cty. 2014).

On appeal to the Illinois Appellate Court, Towers claimed that the trial court erred in dismissing his postconviction petition without an evidentiary hearing because he had (1) presented newly discovered evidence (*i.e.*, Lewis's affidavit) that would change the result on retrial, and (2) shown that his trial counsel was ineffective for failing to investigate or call Brooks, Cobb, and McNeal as witnesses. *See id.*, Ex. L, Pet'r's Opening Br. Postconviction Appeal at 15, 26, *People v. Towers*, No. 1-14-1474 (Ill. App. Ct. 2016). Towers did not challenge the trial court's decision with respect to Eric Carson. *See generally id.* at 26–41. The appellate court affirmed the dismissal of his postconviction petition. *See Towers*, 2016 WL 7434788, at *7–10.

In his subsequent PLA to the Illinois Supreme Court, Towers claimed that (1) he was actually innocent, and (2) trial counsel was ineffective for not calling Brooks, Cobb, and McNeal as defense witnesses and for not interviewing McNeal. *See* State Court Record, Ex. P, Postconviction PLA at 11, 16–18, *People v. Towers*, No. 121925 (Ill. 2017). The Illinois Supreme Court denied Towers's postconviction PLA on May 24, 2017. *See id.*, Ex. Q, Order Denying Postconviction PLA, *People v. Towers*, No. 121925 (Ill. 2017).

## Federal *Habeas* Claims

Towers's *habeas* petition presents the following claims: (1) denial of due process from the trial court's delay in ruling on his pretrial motion to bar evidence of his prior convictions and decision to allow cross-examination about his interactions with police; (2) ineffective assistance of trial counsel for failing to properly investigate and call certain witnesses; and (3) actual innocence based on Ralph Lewis's affidavit.

## Legal Standard

A writ of *habeas corpus* will be granted only if the Petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, the Court may not grant *habeas* relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state-court decision is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Clearly established federal law consists of the "holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict that standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a

presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Moreover, the Court's analysis is "backward-looking." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The Court is limited to reviewing the record before the state court, as well as the Supreme Court precedent in existence, at the time of the state-court decision. *Id.*; *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

"AEDPA's standard is intentionally 'difficult [for Petitioner] to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 352 (2013)). "As a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (internal quotation marks omitted). *Habeas corpus* is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks omitted). "Under § 2254(d), a *habeas* court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.* at 102.

<u>Analysis</u>

## I.    Evidence of Prior Convictions

Towers contends that the trial court denied him due process by delaying its ruling on his pretrial motion to exclude evidence of his prior convictions and by allowing the prosecution to open the door to the prior convictions by cross-examining him about his previous interactions with the police.   Furthermore, he argues, the state appellate and supreme courts unreasonably applied the law in upholding these decisions.   Respondent asserts that these claims are procedurally defaulted in part, non-cognizable in a *habeas* petition, and ultimately meritless.

### A.    Procedural Default

The Court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).   "A claim will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).   The state court must have "actually relied on the procedural bar as an independent basis for its disposition." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012).   "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.*

The cross-examination portion of Towers's claim is procedurally defaulted. On direct appeal, the appellate court concluded that Towers had forfeited any argument about the propriety of the prosecution's cross-examination by failing to raise it in a post-trial motion. *See* State Court Record, Ex. D, *People v. Towers*, No. 1-08-1875, slip op. at 17–18 (Ill. App. Ct. Mar. 9, 2010). Forfeiture is an adequate and independent state ground. *See Szabo v. Walls*, 313 F.3d 392, 395–96 (7th Cir. 2002).

Additionally, although not raised in his petition, the Court notes that any challenge to the trial court's use of the "mere fact" method of introducing Towers's prior convictions also would be procedurally barred.[3] On direct appeal, the appellate court concluded that the use of this method was erroneous. *See* State Court Record, Ex. D, *People v. Towers*, No. 1-08-1875, slip op. at 20–21 (Ill. App. Ct. 2010) (citing *People v. Patrick*, 908 N.E.2d 1 (2009)). The court concluded, however, that Towers had invited the error by agreeing to the method. *Id.* This concept—"invited error"— is another flavor of the forfeiture doctrine, and thus provides an adequate and independent state ground for the decision. *See Szabo*, 313 F.3d at 395–96; *see also Coleman v. O'Leary*, 845 F.2d 696, 699–700 (7th Cir. 1988) (holding that use of the "invited error" doctrine precluded federal *habeas* review).

### B. Delayed-Ruling Claim

The only remaining portion of Towers's due-process claim is his challenge to the trial court's delay in ruling on his pretrial motion to exclude evidence of his prior convictions. As the state appellate court explained, the trial court's practice of

---

[3]     Towers raises this issue in his reply brief. *See* Pet'r's Reply at 24–25, ECF No. 18.

waiting to hear Towers's testimony before ruling on the motion was erroneous under *Patrick*, 908 N.E.2d 1. Respondent contends that this was an error of only state evidentiary law, and thus is not cognizable on federal *habeas* review.

It is true that evidentiary rulings generally are not cognizable in a *habeas* proceeding. *See, e.g., United States ex rel. Searcy v. Greer*, 768 F.2d 906, 910 (7th Cir. 1985) ("Violations of state evidentiary laws generally do not form the basis upon which federal habeas corpus relief can be granted. A habeas proceeding concerns only whether federal constitutional rights were infringed."). Still, a state court's erroneous evidentiary ruling may be reviewable if it is "so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial," and produces a "significant likelihood that an innocent person has been convicted." *Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999). Towers casts his claim as such a due-process violation.

Towers's due-process claim, however, fails as a matter of law. Towers has not cited, and this Court has not found, any Supreme Court case holding that a defendant's right to testify is infringed by a trial court's decision to reserve ruling on prior-conviction impeachment until after the defendant's testimony. In fact, as other courts addressing *Patrick* have concluded, Supreme Court precedent cuts the other way. *See, e.g., Rials v. Harrington*, No. 12 C 05342, 2013 WL 6633191, at *6 (N.D. Ill. Dec. 16, 2013). As the *Rials* court explained, cases such as *Luce v. United States*, 469 U.S. 38 (1984), and *Ohler v. United States*, 529 U.S. 753 (2000), clarify that "it is not thought inconsistent with the enlightened administration of criminal justice to

require the defendant to weigh such pros and cons [like the possibility of impeachment with prior convictions] in deciding whether to testify." *Rials*, 2013 WL 6633191, at *7 (quoting *Ohler*, 529 U.S. at 760). Accordingly, there is "no clearly established federal law that requires a trial judge to decide whether a defendant's prior convictions are admissible before he testifies." *Id.*; *accord Taylor v. Nicholson*, No. 17 C 1552, 2018 WL 4052172, at *5 (N.D. Ill. Aug. 24, 2018); *Weatherspoon v. Harrington*, No. 13 C 8621, 2014 WL 4771853, at *10 n.3 (N.D. Ill. Sept. 24, 2014).

Accordingly, Towers's petition is denied with respect to his claims regarding the trial court's rulings on the admission of his prior convictions and police interactions.

## II. Ineffective Assistance of Counsel

Towers next asserts that the state courts unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in concluding that his trial counsel was not ineffective for failing to investigate and call several witnesses who, he says, would have supported his misidentification theory. Respondent takes issue with the scope of Towers's claim, argues that the state courts decided Towers's claim regarding investigation of witnesses on an adequate and independent state ground, and contends that the state courts reasonably applied *Strickland* to counsel's decisions regarding which witnesses to call.

### A. Scope of the Claim

Towers asserts generally that his trial counsel was ineffective for failing to investigate and call witnesses. Respondent points out that Towers's petition does not

clarify *which* witnesses he believes his counsel should have investigated or called. Accordingly, Respondent contends, this claim violates Rule 2(c) of the Rules Governing Section 2254 Cases, which requires a *habeas* petition to describe the facts supporting each ground for relief. But Respondent also addresses the merits of Towers's claims, contending that trial counsel was not ineffective for failing to call McNeal, Brooks, or Cobb as defense witnesses.

In response, Towers has filed (1) a reply brief in support of his petition, which challenges trial counsel's failure to investigate McNeal or to call McNeal, Brooks, and Cobb as witnesses, (2) a motion to amend his petition to include this elaboration, and (3) a proposed amended petition. Respondent takes "no position" on whether Towers can amend his petition, but responds to what he sees as the additional elements of Towers's ineffective-assistance claim as laid out in his supplemental filings. Respondent argues that (1) the state courts reasonably concluded that McNeal's affidavit does not establish that he was never contacted by counsel, and (2) the state courts reasonably concluded that McNeal's testimony would not change the outcome of the case.

The Court grants Towers's motion to amend his petition [20] as uncontested. What is more, the Court notes that Respondent has had a full and fair opportunity to address Towers's contentions with respect to trial counsel's investigation of McNeal and decision not to call McNeal, Brooks, and Cobb as defense witnesses. Accordingly,

the Court will address Towers's ineffective-assistance claim as it pertains to these witnesses and decisions by trial counsel.[4]

## B.    The "Affidavit Rule"

Respondent contends that Towers's claim regarding the investigation of witnesses was addressed on an adequate state ground and is therefore procedurally defaulted.  Namely, Respondent points to the state appellate court's invocation of Illinois's "affidavit rule."  Under 725 Ill. Comp. Stat. 5/122-2, a state postconviction petition must "have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."  The state appellate court looked at McNeal's, Cobb's, and Brooks's statements and concluded:

> At the outset, we note that none of the affidavits attached to the defendant's amended petition support his claim that his trial attorney failed to interview McNeal, Brooks, and Cobb.  That is, none of the affiants swore that they were not contacted by an attorney or investigator regarding the defendant's trial.  Because the affidavits do not foreclose the possibility that trial counsel or his private investigator contacted and interviewed the three witnesses, the defendant's assertion that his trial attorney failed to interview McNeal, Brooks, and Cobb is not supported by the affidavits or other evidence as required by section 122-2 of the Act (725 ILCS 5/122-2 (West 2012)). . . .

*Towers*, 2016 WL 7434788, at *9.

Illinois courts' use of 5/122-2 is often regarded as an independent state procedural ground precluding federal review.  *See, e.g.*, *Jones v. Calloway*, 842 F.3d

---

[4]    To the extent Towers attempts to raise other arguments about his counsel's failure to investigate witnesses other than McNeal or call witnesses other than McNeal, Brooks, and Cobb, those claims are procedurally defaulted, as the only claims that Towers pursued through all three levels of the Illinois courts are the claims pertaining to these witnesses. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (explaining that a petitioner must present claims through "one complete round" of the appellate process).

454, 461 (7th Cir. 2016); *Thompkins*, 698 F.3d at 986–87. In this case, however, the appellate court did not make a procedural ruling. Instead, the appellate court evaluated the substance of the affidavits and concluded that they did not support Towers's allegations of counsel's failure to investigate. This conclusion was interwoven with the merits of Towers's ineffective-assistance claim, and thus does not provide an independent state ground for the denial of the claim. *See Sanders v. Cotton*, 398 F.3d 572, 579–80 (7th Cir. 2005) (explaining that when the state court's decision "fairly appears to rest primarily on the resolution of [the petitioner's] claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, we may conclude that there is no independent and adequate state ground and proceed to hear the federal claims"); *see also Williams v. Hardy*, No. 12 C 5345, 2016 WL 1247448, at *6–7 (N.D. Ill. Mar. 30, 2016) (applying the "interwoven with the merits" standard to an Illinois court's invocation of 5/122-2).

## C.    Ineffective Assistance of Counsel

The Court thus turns to the merits of Towers's claim that his trial counsel was constitutionally ineffective for (1) failing to adequately investigate McNeal and (2) unreasonably deciding not to call McNeal, Brooks, and Cobb as witnesses.

Under AEDPA, "ineffective assistance of counsel is a mixed question of law and fact reviewed de novo with a strong presumption that the attorney performed effectively." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). To establish ineffective assistance, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms,

and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 688–93; *see Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010).

Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A *habeas* petitioner "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance. . . . [H]e must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Emerson v. Shaw*, 575 F.3d 680, 685 (7th Cir. 2009). Simply put, the court's decision must be "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

### i.   Performance

As to counsel's performance, "a lawyer's decision to call or not call a witness is a strategic decision generally not subject to review," and counsel need not present each and every possible witness. *Carter v. Duncan*, 819 F.3d 931, 942 (7th Cir. 2016) (internal citation and quotation marks omitted). "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic. An outright failure to investigate witnesses, however, is more likely to be a sign of deficient performance." *Id.* Accordingly, the question is whether a *strategic* decision was made, because "the consequences of inattention rather than reasoned strategic decisions are not entitled to the presumption of reasonableness." *Id.* (quoting *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012)).

Here, the Illinois Appellate Court concluded that trial counsel was not constitutionally ineffective. First, the court found that "none of the affiants swore that they were not contacted by an attorney or investigator regarding the defendant's trial." *Towers*, 2016 WL 7434788, at *9. Accordingly, the court moved on to counsel's decision not to call McNeal, Brooks, or Cobb as witnesses, and concluded that this was a matter of reasonable trial strategy. *Id.* The court noted that trial counsel presented Towers's misidentification theory through cross-examination of the prosecution's witnesses, the testimony of Carlos Bonds, and testimony that a dark blue Lumina was parked outside of Arian Bonds's house within a few days of the shooting. *See id.* Trial counsel, the court then determined, could have reasonably concluded that McNeal, Brooks, and Cobb would not have been useful witnesses because none were present at the shooting. *See id.*

The Illinois appellate court's conclusion that there was no evidence that Towers's trial counsel had failed to investigate these witnesses was unreasonable. McNeal's affidavit states: "Had I known an innocent person was locked up, I would've been [*sic*] told my statement. From what [Arian Bonds] told me I know he committed that crime that [Towers is] in jail for. No one ever contacted me to come to his trial but I will if my statement can help an innocent man." *Id.* at *5. The only reasonable interpretation of McNeal's statement is that, prior to being contacted to write his affidavit, he did not know that Towers was "locked up" for the crime that he believed Arian Bonds had committed. *See id.* Yet if counsel had contacted him prior to trial, McNeal necessarily would have known about Towers's arrest and incarceration for

the murder. Accordingly, the appellate court's conclusion—that "none of the affiants swore that they were not contacted by an attorney or investigator regarding the defendant's trial"—finds no support in the record. *See id.* at *9.

Given the uncertainty surrounding trial counsel's investigation of witnesses, particularly McNeal, it was improper for the state appellate court to presume from the limited record before it that counsel's decisions regarding calling witnesses were strategic. [5] *See Carter*, 819 F.3d at 942 (explaining that "strategic choices made after *less than complete investigation* are reasonable" only to the "extent that reasonable professional judgments support[ed] the limits on [the] investigation") (emphasis in original); *see also Lee v. Kink*, 922 F.3d 772, 774 (7th Cir. 2019) (finding an evidentiary hearing necessary where "we just don't know" what counsel did to investigate witnesses' potential testimony before trial). In other words, without evidence as to whether trial counsel fully investigated potential witnesses, the Illinois appellate court could not reasonably have concluded that trial counsel's performance was sufficient. *See Carter*, 819 F.3d at 942–43.

### ii. Prejudice

Even if his counsel's performance was deficient, however, Towers is not automatically entitled to *habeas* relief. Rather, unless there is a "reasonable

---

[5] There is little evidence in the record regarding counsel's attempts to investigate or interview these witnesses. What we do know is that counsel considered Brooks as a potential witness (as Brooks's statement indicates that he was subpoenaed) and hired an investigator to talk to Cobb (as Cobb's statement appears on an investigator's letterhead). *See* State Court Record, Ex. I, Pet'r's Counseled Postconviction Petition at 12, 14, *People v. Towers*, No. 06 CR 8139. Counsel also listed McNeal as a potential witness. *Towers*, 2016 WL 7434788, at *9. But as to whether counsel actually interviewed them is unclear.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *habeas* relief is unavailable. *Strickland*, 466 U.S. at 694.

If trial counsel had called McNeal, Brooks, and Cobb, they would have presented the following testimony—at least according to the affidavits they submitted to the state courts. McNeal—who owns the dark-colored Lumina that investigators believed may have been the getaway car—says that Arian Bonds borrowed that car in 2006 after Arian's brother "had an altercation with his girlfriend's ex-boyfriend" and "tore [Arian's] car up." *See Towers*, 2016 WL 7434788, at *5. McNeal attests that Arian brought the car back the next evening, telling him that he had "found the guy who his brother was fighting and who tore up his car and . . . 'made the n*** pay for it.'" *See id.* Arian said "that the guy had thought Carlos was him and tried to get him back because he was dating his girl." *See id.* McNeal states that he does not know Towers and would never have let Towers borrow his car. *See id.*

Cobb's statement explains that he was in an altercation outside Arian Bonds's house on Emerald Street in December or January 2006. *See id.* He was standing outside the house when the driver of a gray Jeep stopped and asked him if he knew who lived there, and if he knew who drove the white Bonneville parked outside. *See id.* Cobb knew that the Bonneville was Arian Bonds's car, but said "f*** you" to the Jeep driver. *See id.* In response, the driver swung at Cobb, and the other passengers of the Jeep joined in beating him, culminating in a glass bottle being broken on Cobb's head. *See id.* Cobb attests that he "heard from the neighborhood that Arian Bonds

was seeing a girl who had a jealous boyfriend," and that the men who attacked him were looking for Arian. *See id.* Cobb claims, however, that he never drove a Focus and that neither he nor Towers was in an altercation on January 14, 2006. *See id.*

Lastly, Brooks claims to have witnessed a fight at 55th and Emerald Streets that involved Carlos Bonds, Cobb, and "some dudes," but not Towers. *Id.* He says he has never claimed to have seen Towers in a fight on 55th and Emerald Streets. *Id.*

The Illinois Appellate Court held that McNeal, Brooks, and Cobb would not have been useful witnesses because they were not present for the shooting of John Falls. *See Towers*, 2016 WL 7434788, at *9. The court explained:

> [T]heir proposed testimony establishes only that the defendant was not involved in a traffic altercation at 56th and Emerald during the early morning hours of January 14, 2006, and that McNeal loaned his vehicle to Arian Bonds. Because McNeal, Brooks, and Cobb were not at the scene of the shooting, which occurred in the afternoon of January 14, 2006 at a Popeye's restaurant, their proposed testimony does not establish that the defendant was not the shooter.

*Id.* But prejudice does not require a showing that the omitted evidence would prove the defendant's *innocence.* Rather, it merely requires a showing that, but for counsel's failure to present the testimony, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *see Toliver v. McCaughtrey*, 539 F.3d 766, 776 (7th Cir. 2008) (finding that prejudice had been shown where the omitted testimony "no doubt would have enhanced significantly the chances of the jury's accepting [petitioner's] characterization of the facts").

Applying the *Strickland* standard, the Court concludes that the result of the proceeding would likely have been different had the jury heard testimony from

McNeal, Brooks, and Cobb. As the appellate court noted, trial counsel's presentation of the misidentification defense consisted of (1) attempting to discredit Ross's and McFulson's testimony, (2) examining Carlos Bonds, who did not testify to being present for either the morning altercation or the shooting, and (3) "vigorously cross-examin[ing] Harper" regarding the fact that Falls was looking for his ex-girlfriend Ebony Ester (who, Carlos Bonds testified, was dating his brother Arian). *See Towers*, 2016 WL 7434788, at *9. But none of this constituted affirmative rebuttal of Towers's identity as either the Bonneville driver from the morning altercation or as the shooter. By contrast, McNeal would have placed Arian Bonds in the purported getaway car and provided a motive for him to have shot Falls. What is more, McNeal, Brooks, and Cobb would have provided alternate versions of the altercation—each of which, although different in some ways, describes individuals other than Towers being involved in the fight. This testimony would have cast significant doubt on the prosecution's theory, in which the altercation was the impetus for Towers to murder Falls.

The proposed testimony offers "unique information, available from no other witnesses, that was corroborative of" Towers's theory of defense. *Toliver*, 539 F.3d at 776. Accordingly, the state court's conclusion that the loss of these witnesses did not prejudice Towers—because they do not unmistakably prove his innocence—is an unreasonable application of *Strickland. See id.*; *see also Lee*, 922 F.3d at 774–75 (explaining that affidavits are merely a starting point and that it can be assumed that exculpatory witnesses will more fully flesh out their testimony at a hearing or

trial); *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 250–53 (7th Cir. 2003) (emphasizing the importance of exculpatory occurrence witnesses and collecting cases); *Washington v. Smith*, 219 F.3d 620, 633–34 (7th Cir. 2000) (explaining that counsel was ineffective for failing to investigate and call disinterested alibi witnesses); *Crisp v. Duckworth*, 743 F.2d 580, 585 (7th Cir. 1984) ("Having independent witnesses corroborate a defendant's story may be essential—especially in a first degree murder case[.]").

### iii.    Necessity of an Evidentiary Hearing

"Where a *habeas* petitioner shows that a state court's decision denying relief was contrary to or an unreasonable application of federal law, that will often show that the petitioner is entitled to relief, but the critical point here is that it will not do so always and automatically." *Mosley*, 689 F.3d at 852. In other words, "[w]hether the petitioner is actually entitled to relief—whether under § 2254(a) he is in custody in violation of the Constitution or laws or treaties of the United States—is a separate question." *Id.* Here, although the Court has determined that the state courts' decisions were unreasonable in light of the contents of the affidavits before them, "that does not mean the . . . affidavits are actually true or that they provide the complete picture of the facts relevant to [petitioner's] claim of ineffective assistance of counsel." *Id.*; *see also Lee*, 922 F.3d at 774–75.

"[A] habeas petitioner is entitled to an evidentiary hearing . . . if he has alleged facts that would entitle him to relief and the state courts, for reasons not attributable to him, denied him a full and fair hearing to explore those facts." *Hampton*, 347 F.3d

at 244. Here, the facts as presented in the petition and supporting affidavits potentially would entitle Towers to relief. Furthermore, "[b]ecause the postconviction court [ ] summarily dismissed [Petitioner's] ineffectiveness claim, the state court record was never developed as to what [trial counsel] knew about" McNeal as an exculpatory occurrence witnesses, what steps he may have taken to speak with McNeal, and what his reasons were (if any) for not presenting any of the three proposed witnesses. *Id.* The failure of the state court to hold a hearing on these issues was no fault of Towers's, as he requested a hearing at multiple points in the procedural posture. *See id.* This Court cannot assess the scope of trial counsel's investigation and decisionmaking without a hearing. *See id.* at 244–45; *see also Lee*, 922 F.3d at 774–75.

Accordingly, the Court will schedule an evidentiary hearing in this matter with respect to Towers's ineffective-assistance claim. The Court will recruit counsel to assist Towers for the limited purposes of this hearing. *See* Rule 8(c), Rules Governing Section 2254 Cases ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

## III.    Actual Innocence

Towers's final claim is that he is actually innocent based on Ralph Lewis's affidavit, which explains that Lewis was riding in a car with Arian Bonds in the "early morning hours" of January 14, 2006, when Bonds pulled into a Popeye's and shot at

a white truck.  *Towers*, 2016 WL 7434788, at *4.  Respondent contends that this claim is non-cognizable in a federal *habeas* proceeding.

Respondent is correct.  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Milone v. Camp*, 22 F.3d 693, 699–700 (7th Cir. 1994) (explaining that unless a prisoner is facing a death sentence, "actual innocence" is not a cognizable claim).  In any event, as described by the Illinois Appellate Court, Lewis's affidavit does not prove Towers's innocence, but rather contradicts his theory of defense.  *See Towers*, 2016 WL 7434788, at *7.  Accordingly, the Court denies his petition as to this claim.[6]

---

[6]    Since Lewis's affidavit is unhelpful to Towers, the Court also rejects Towers's suggestion that it can be used as a "gateway claim" of actual innocence to excuse his procedural default.  *See* Pet'r's Reply at 13; *Jones*, 842 F.3d at 461.

## Conclusion

For the reasons provided in this Memorandum Opinion and Order, the Court denies the petition in part and reserves ruling on the Petitioner's claim of ineffective assistance of counsel until an evidentiary hearing can be held. The Court will recruit counsel to represent Petitioner for the limited purposes of the evidentiary hearing on Petitioner's ineffective-assistance claim. Plaintiff is granted leave to subpoena trial counsel for records and for a deposition. A status hearing is scheduled for November 5, 2019 at 9:00 a.m. to set a schedule for the evidentiary hearing, witness disclosures, and discovery.

**IT IS SO ORDERED.**                    ENTERED:

_____
John Z. Lee
United States District Judge

Date: September 3, 2019